### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHELLE L. DAVIS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | NO. 20-cv-04867-RAL |
| Commissioner of Social Security,[1] | : | |

**RICHARD A. LLORET**                                                                                                                                                                                      **May 9, 2022**
**U.S. Magistrate Judge**

### <u>MEMORANDUM OPINION</u>

Michelle Davis filed a claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") with the Commissioner of Social Security. An Administrative Law Judge ("ALJ") denied her application, and the Appeals Council affirmed the ALJ's decision. Ms. Davis alleges that the ALJ improperly evaluated the opinions of her treating physician and a consultative psychologist. The Commissioner responds that the ALJ's evaluations are supported by substantial evidence. After carefully reviewing the record, I find that the ALJ's decision, in several material respects, was not capable of meaningful review, because the ALJ did not adequately account for evidence that contradicted her conclusions. I will reverse the Commissioner's denial of benefits and remand this matter for further proceedings consistent with this opinion.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

1

## PROCEDURAL HISTORY

On November 30, 2017, Ms. Davis filed claims for DBI and SSI, alleging a disability beginning on August 1, 2017. Administrative Record ("R.") 10. Her claims were initially denied on May 24, 2018. R. 120, 125.

On June 6, 2018, Ms. Davis requested an administrative hearing before an ALJ. R. 130. The ALJ held the hearing on July 18, 2019 and issued a decision denying Ms. Davis's claim on August 7, 2019. R. 10, 29. On August 20, 2019, Ms. Davis appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 214. The Appeals Council denied Ms. Davis's request for review on August 3, 2020. R. 1. On October 2, 2020, Ms. Davis filed this appeal in federal court. Doc. No. 1.

The parties consented to my jurisdiction (Doc. No. 4) and have briefed the appeal. Doc. No. 14 ("Pl. Br."), 17 ("Comm'r Br."), and 22 ("Pl. Reply").

## FACTUAL BACKGROUND

### A. The Claimant's Background

Ms. Davis was forty years old on the date of her alleged disability onset, making her a "younger person" under the regulations. R. 28; 20 C.F.R. §§ 404.1563, 416.963(c). She has at least a high school education and can communicate in English. R. 28. She is unable to perform her past relevant work as a quality control tester. R. 27–28. On November 30, 2017, Ms. Davis applied for DBI and SSI, alleging disability based on PTSD, migraines, insomnia, anxiety, panic attacks, depression, constant tremors, uncontrollable shakes, schizophrenia, and potential to be harmful to self and others. R. 10, 82.

**B. The ALJ's Decision**

On August 7, 2019, the ALJ issued her decision finding that Ms. Davis was not eligible for DBI or SSI because she has not been under a disability, as defined by the Social Security Act. R. 10, 29. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[2]

At step one, the ALJ concluded that Ms. Davis had not engaged in substantial gainful activity ("SGA") since August 1, 2017. R. 12. At step two, the ALJ determined that Ms. Davis had the following severe impairments: migraine headaches, seizure disorder, depressive disorder, major depressive disorder with psychotic features, generalized anxiety disorder, post-traumatic stress disorder, and obesity. *Id.*

At step three, the ALJ compared Ms. Davis's impediments to those contained in the Social Security Listing of Impairments ("listing").[3] The ALJ found that Ms. Davis did not meet listing 11.02 for epilepsy and her migraines did not medically equal listing 11.01 (neurological impairments). R. 14–15. Furthermore, the ALJ found that none of Ms. Davis's mental health impairments met or medically equaled listings 12.04, 12.06,

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

or 12.15, as she did not have one extreme or two marked limitations in the "paragraph B" criteria and did not establish the presence of any "paragraph C" criteria. R. 15–16.

Prior to undertaking her step four analysis, the ALJ assessed Ms. Davis's residual functional capacity ("RFC"), or "the most [Ms. Davis] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ found that Ms. Davis could undertake light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), subject to certain limitations.[4] R. 16–27. At step four, the ALJ found that Ms. Davis could not perform her past relevant work as a quality control tester, as defined by 20 C.F.R. §§ 404.1565, 416.965. R. 27–28. At step five, the ALJ identified three jobs that Ms. Davis could perform considering her age, education, work experience, and RFC: electrical accessories assembler, finish inspector, and masker of electronic components. R. 28–29. Because the ALJ identified jobs that Ms. Davis could perform which exist in substantial numbers in the national economy, she found that Ms. Davis was "not disabled." R. 29.

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by

---

[4] Specifically, the ALJ found that Ms. Davis is limited to "no exposure to unprotected heights or unprotected moving mechanical parts; no climbing of ladders, ropes, or scaffolds; the work should involve only simple, routine tasks as well as simple judgment and decision making; should be at the low end of the stress spectrum with few workplace changes, meaning the same duties are performed at the same station or location from day to day; the work should allow for any production criteria to be made up by the end of the workday or shift; no contact with the general public, and only occasional interaction with co-workers and supervisors." R. 16–17.

substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain her resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

While it is error for an ALJ to fail "to consider and explain [her] reasons for discounting all of the pertinent evidence before [her] in making [her] residual functional capacity determination," *Burnett*, 220 F.3d at 121, an ALJ's decision is to be "read as a whole," *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett*," and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."). The reviewing court, by reading the ALJ's opinion as a whole against the record, should be able to understand why the ALJ came to her decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119–20; *Caruso*, 99 F. App'x at 379.

The regulations reserve the RFC determination for the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("[T]he administrative law judge ... is responsible for assessing your residual functional capacity."); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); *see also Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (in assessing a

6

claimant's RFC, the ALJ is required to consider "all relevant evidence" and adequately explain the basis for the RFC determination). Relevant evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41. Although the ALJ does not need to reference every piece of evidence in the record, particularly when the medical records are "voluminous," *id.* at 42, she must provide a "clear and satisfactory" explanation of her decision. *See id.* at 41; *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). Otherwise, the district court is unable to meaningfully review the decision and determine "if significant probative evidence was not credited or simply ignored." *See Fargnoli*, 247 F.3d at 42 (quoting *Burnett*, 220 F.3d at 121).

## DISCUSSION

Ms. Davis argues that the Commissioner's decision in her case is constitutionally defective and merits reversal because Commissioner Andrew Saul, who oversaw the agency when the ALJ entered her final decision, was protected by an unconstitutional removal statute and served a longer term than the president, in violation of separation of powers principles. Doc. No. 14, at 6–7. Next, Ms. Davis alleges that the ALJ improperly rejected treating physician Dr. Rafael Castro's opinion. *Id.* at 7–17. Ms. Davis also contests the basis for the ALJ's evaluation of consultative psychologist Dr. Brook Crichlow. *Id.* at 17–20. Ms. Davis goes on to argue that the ALJ erred by not presenting all medically supported limitations to the vocational expert through her hypothetical question. *Id.* at 20–21. Lastly, Ms. Davis argues that I should award benefits if I find that she is disabled under the Act. *Id.* at 21–22.

7

The Commissioner responds that substantial evidence supports the ALJ's finding that Dr. Castro's opinion was not persuasive. Doc. No. 17, at 5–7. The Commissioner also asserts that substantial evidence supports the ALJ's evaluation of Dr. Crichlow's opinion. *Id.* at 7–9. The Commissioner contends that the ALJ did not err in presenting her hypothetical to the vocational expert during the hearing. *Id.* at 9–10. The Commissioner also argues, irrespective of the merits of Ms. Davis's separation of powers argument, no alleged constitutional defect here entitles her to a rehearing of her disability claim. *Id.* at 10–21. Lastly, the Commissioner argues that, if I decide in Ms. Davis's favor, the proper remedy is for a remand rather than awarding of benefits. *Id.* at 22. Ms. Davis replied to the Commissioner's arguments. Doc. No. 22.

After a careful review of the record, I find that the ALJ did not adequately account for contradictory evidence, which makes her opinion incapable of meaningful review.[5] Since I am remanding Ms. DeJesus's claim on the substance of the ALJ's decision, I will not reach the constitutional issues raised by the parties.[6]

---

[5] As to Ms. Davis's argument that the ALJ "failed to incorporate all of Plaintiff's limitations" in her hypothetical for the vocational expert (Doc. No. 14, at 20), my reading of the record indicates that the medical experts' proposed limitations were adequately addressed in the ALJ's hypotheticals. Nevertheless, because the ALJ may modify the limitations presented to the vocational expert on remand, the issue need not be resolved in this opinion.

[6] The judges in this district who have addressed similar questions have found that injuries caused by the decisions of ALJs serving under Social Security Commissioners who are protected by unconstitutional removal clauses cannot be traced to the constitutional defect in the Social Security Act. *See Adams v. Kijakazi*, No. 20-3591, 2022 WL 767806, at *9–11 (E.D. Pa. Mar. 14, 2022) (Hey, MJ.); *Burrell v. Kijakazi*, No. CV 21-3662, 2022 WL 742841, at *5 (E.D. Pa. Mar. 10, 2022) (Reid, MJ.); *High v. Kijakazi*, No. CV 20-3528, 2022 WL 394750, at *5–6 (E.D. Pa. Feb. 9, 2022) (Wells, MJ.); *Wicker v. Kijakazi*, No. CV 20-4771, 2022 WL 267896, at *8–10 (E.D. Pa. Jan. 28, 2022) (Heffley, MJ.).

> **A. The ALJ's evaluation of treating physician Dr. Castro's opinion is not capable of meaningful review because it does not adequately account for contradictory evidence.**

The ALJ concluded that treating physician Dr. Rafael Castro's 2019 opinion concerning the impact of Ms. Davis's migraines on her ability to work was not persuasive.[7] R. 27. I cannot review this conclusion in a meaningful way because the ALJ has not adequately accounted for contradictory evidence.

Ms. Davis's claim, filed on November 30, 2017, is subject to the new Social Security regulations with regard to the treatment of medical opinions, which became effective on March 27, 2017. The new regulations no longer require an ALJ to give a certain evidentiary weight to a medical opinion, but instead require the ALJ to focus on the persuasiveness of each opinion:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 416.920c(a).

 The regulations note that supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions … to be." *Id*. § 416.920c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." *Id*. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will

---

[7] Dr. Castro also completed an employability assessment form in February 2018, which the ALJ also found not persuasive. R. 26. Ms. Davis does not challenge this finding, and I will leave it undisturbed.

9

be." *Id.* § 416.920c(c)(2). The regulations also instruct an ALJ to consider the physician's relationship with a claimant, whether the physician "has received advanced education and training" as a specialist, and other factors such as the medical source's familiarity with other evidence. *Id.* § 416.920c(c)(3)–(5). Only the concepts of consistency and supportability, however, must be addressed by ALJs in their written opinions. *Id.* § 416.920c(b)(2).

Despite providing a new analytical framework for ALJs, these regulations "[do] not authorize lay medical determinations by ALJs" and do not "relieve the ALJ of the responsibility of adequately articulating the basis for a medical opinion evaluation." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *4 (M.D. Pa. May 19, 2021). "While the ALJ is, of course, not bound to accept physicians' conclusions, [she] may not reject them unless [she] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (internal quotation omitted).

In evaluating Dr. Castro's opinion, the ALJ wrote that the opinion "is not consistent with the claimant's reports to Dr. Castro or his assessments her impairments were controlled." R. 27. My review of the record undermines this conclusion. Dr. Castro indeed noted in two of Ms. Davis's appointment notes that her migraines are "controlled." R. 415, 420. In those same appointment notes, however, Dr. Castro explained that Ms. Davis suffers frequent/severe headaches, migraines, and tremors. R. 414, 419. The ALJ did not discuss why she credited one aspect of these medical notes but not another. This is erroneous. As this evidence is pertinent to this issue and

undermines her conclusion, the ALJ must cite it and discuss her resolution of it on remand. *See Burnett*, 220 F.3d at 121–22.

The ALJ also described Dr. Castro's opinion as "not consistent with the overall record of conservative treatment." R. 27. The conclusion that Ms. Davis underwent conservative treatment is not supported by substantial evidence, and thus cannot be cited to show whether the opinion is consistent with or supported by the record. It may be appropriate for a doctor to form an opinion that one would expect to see a more aggressive treatment history for a medical issue. Such an opinion would be based upon the doctor's years of medical training and clinical experience, and it would enable him to come to some general rule-of-thumb about the relationship between aggressive treatment history and the severity of the disorder. Such an opinion is often offered by an examining or consulting physician and can form the basis of an ALJ's determination that the level of treatment is not commensurate with the limitations identified by the treating physician. But the ALJ is not free to "go it alone." It is not permissible for an ALJ to arrive at such a conclusion, absent substantial support in the medical evidence in the record before her. Conservative treatment for a particular condition may mean that aggressive treatment does not offer much hope of success, rather than indicate that the condition is mild. Without the benefit of years of training and clinical experience that a physician brings to bear in evaluating whether a course of treatment is "conservative," and the significance of conservative versus aggressive treatment, the conclusion is not supported by substantial evidence. I find no support for this conclusion in Ms. Davis's medical record, as the record merely describes Ms. Davis's migraine treatments without weighing whether the treatments are aggressive or conservative by nature. On remand, the ALJ must fully explain her conclusions concerning Dr. Castro's opinion.

11

**B. The ALJ's conclusions about Ms. Davis's migraine symptoms are not capable of meaningful review because they do not adequately account for contradictory evidence.**

Throughout the opinion, the ALJ reaches several conclusions regarding the severity of Ms. Davis's migraine condition. Several of her conclusions are not capable of meaningful review. They must be revisited on remand.

The ALJ found Ms. Davis's claim that she suffers migraines "at least two to three times per week, lasting hours or days" to be "inconsistent with [Ms. Davis's] reports of daily activities." R. 22. The ALJ cited several examples from the record in reaching this conclusion, including Ms. Davis's daily trips to the gym in 2018 and 2019 and her ability to take walks. *Id*. However, the ALJ did not explain why these activities are incompatible with a finding that her migraine symptoms impact her ability to work. Just because a claimant can go to the gym and take walks does not mean that she is not suffering debilitating migraines several times per week. Relatedly, the ALJ explicitly noted that Ms. Davis can walk her dog five or six times on "good days." *Id*. Discussion in the record of Ms. Davis's ability to engage in certain activities on "good days" would suggest that her migraines are sufficiently frequent to routinely trigger "bad days," or days when her functioning is reduced.

The ALJ also wrote, "The claimant reported she needed to stay inside a dark room during migraines, but she also reported to her neurologist her headaches were triggered by marijuana smoke from downstairs neighbors; therefore, she left the house as often as possible." *Id*. The ALJ does not adequately explain this conclusion. Just because Ms. Davis is unable to remain at home while suffering migraines due to an environmental trigger does not mean she can join the workforce as a productive employee. This conclusion does not consider whether leaving the house actually cures or

12

prevents her migraines, or whether her migraines trigger lingering symptoms even after they have resolved. She may still be sick upon leaving her house and therefore face great difficulty working. The ALJ must provide a more meaningful explanation for this conclusion.

Finally, the ALJ committed error by not discussing whether Ms. Davis's symptoms would impact her ability to work on a regular and continuing basis, despite acknowledging Ms. Davis's reports to doctors that her migraines can sometimes last multiple days. *See* R. 19–21. During the hearing, the vocational expert testified that missing more than four days of work per month or veering off-task 25 percent of the workday would be work preclusive. R. 64–65. Yet, the ALJ did not engage with this testimony in her analysis. In determining whether a claimant has residual functional capacity, the ALJ must weigh whether the claimant can engage in "sustained work activities in an ordinary work setting on a **regular and continuing** basis." SSR 96-8p, Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *2 (July 2, 1996) (emphasis in original). The Social Security Administration defines a "regular and continuing basis" as comprising of work lasting "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. The ALJ erred by not conducting this analysis in issuing her decision. This issue must be addressed on remand.

### C. The ALJ's evaluation of consultative psychologist Dr. Crichlow's opinion is not capable of meaningful review because it does not adequately account for contradictory evidence.

The ALJ deemed the opinion of consultative psychologist Dr. Crichlow's to be "somewhat persuasive," but disagreed with his conclusion that Ms. Davis had marked limitations in her ability to interact appropriately with supervisors and respond appropriately to usual work situations and changes in routine work settings. R. 26; *see*

13

*also* R. 438 (Dr. Crichlow's opinion). Therefore, the ALJ disagreed with Dr. Crichlow's opinion that Ms. Davis has marked limitations of two of the four "paragraph B" criteria and thus has a mental disorder that meets the severity of a listing condition. I find that the ALJ's conclusion here is not capable of meaningful review because it does not adequately account for contradictory evidence.

When evaluating whether a claimant meets the listing for a mental disorder, the ALJ must assess whether the claimant satisfies "paragraph B criteria," requiring a finding that the claimant has an "'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A(1)(b). The four paragraph B criteria are "understand, remember, or apply information;" "interact with others;" "concentrate, persist, or maintain pace;" and "adapt or manage oneself." *Id.* § 12.00E(1)–(4). While a determination that a claimant's impairment meets relevant listing criteria is reserved for the ALJ, *see generally* 20 C.F.R. §§ 404.1525, 416.925, the ALJ must nevertheless sufficiently explain her rationales for discounting relevant evidence, including consultative opinions, *see Burnett*, 220 F.3d at 119–21.

The ALJ first concluded that Dr. Crichlow's opinion that Ms. Davis has a marked limitation in her ability to interact with others is "not consistent with the longitudinal evidence." R. 26. The ALJ wrote that "[t]he claimant remained capable of engaging with friends and family, going to the gym almost daily, walking in public, shopping in stores, and going to a concert." *Id.* Relatedly, the ALJ also concluded elsewhere in the opinion that despite her panic attacks, she was able to leave the house and could "maintain going to the gym multiple times per week, shopping with a friend, walking her dog, and going to the nail salon." R. 25.

14

When weighing a claimant's reports of mental disorders, an ALJ must consider that a claimant's ability to engage in "some routine activities without help or support does not necessarily mean that [a claimant does] not have a mental disorder or [is] not disabled," as a claimant's "daily functioning may depend on the special contexts in which [she] function[s]." 20 C.F.R. Part 404, Subpt. P, App.1, § 12.00D(3)(a)–(b). The regulations also caution that a claimant's ability "to use an area of mental functioning at home or in [the] community" does not necessarily mean that the claimant "would also be able to use that area to function in a work setting where the demands and stressors differ from those at home." 20 C.F.R. Part 404, Subpt. P, App.1, § 12.00F(3)(c). Here, the ALJ presented no analysis concerning whether Ms. Davis's engagement in the above daily activities indeed indicates that she can perform effectively in a work environment. This is erroneous.

Nor does the ALJ adequately grapple with Ms. Davis's hearing testimony and written statement, which tend to undermine the ALJ's conclusions. *See, e.g.*, R. 58 (Ms. Davis testified she is able to go out, but that she only goes to stores with a friend or her case manager from Penndel Mental Health), 304 (Ms. Davis reported she suffered panic attacks at Wal-Mart and Aldi in September 2017), 315 (as of December 2018, Ms. Davis would only leave the house with her aunt and uncle's encouragement), 332–33 (Ms. Davis wrote both that she goes for walks, but that going for walks can be too overwhelming because of her fear of being watched or followed), 339 (Ms. Davis wrote that she finds herself "snapping at people in the stores"). These appear to be occasional activities at most, and Ms. Davis does not even seem to engage in all of these activities independently. The ALJ must resolve this contradictory evidence when evaluating Dr.

Crichlow's opinion, just as she must resolve it when determining whether Ms. Davis can work despite her mental disorders.[8]

The ALJ found the opinion of State psychological consultant Dr. Richard Small regarding Ms. Davis's mental disorders to be persuasive. R. 26. The opinion does not recommend finding marked limitations in any Paragraph B criteria. R. 26, 87. However, rather than analyze the consistency and supportability of Dr. Small's opinion, the ALJ merely wrote that she "agrees the claimant's mental limitations result in no more than moderate limitations as evidenced by her daily activities." R. 26. This conclusory statement is insufficient to permit meaningful judicial review. When resolving contradictory medical opinions, the ALJ "'cannot reject evidence for no reason or the wrong reason.'" *Mason*, 994 F.2d at 1066 (quoting *Cotter v. Harris,* 642 F.2d 700, 707 (3d Cir. 1981)). The ALJ must present some reasoning based on substantial evidence that indicates why she favors one medical opinion over another. Her reasoning here is too conclusory to permit meaningful judicial review. This must be corrected on remand.

Finally, the ALJ wrote that "[Ms. Davis's] presentation with Dr. Crichlow was inconsistent with her presentation at appointments with her treating providers." R. 26. This conclusion is not supported by substantial evidence.[9] Dr. Crichlow described her as

---

[8] It seems clear that the ALJ questioned Ms. Davis's reliability as a source of information about her own condition. *See, e.g.*, R. 25 ("Despite reports of going to the hospital multiple times for [panic] attacks, there are only two emergency room visits [in the record] and she was not assessed with panic disorder."). But a generalized caution about an applicant's reliability as an historian is not enough. It must be tied to a specific finding about the weight given to contradictory evidence found in the record. Particularly when the contradictory evidence comes from a medical report or opinion, a reviewing court cannot with any confidence rely on the ALJ's generalized skepticism about the applicant as an historian to discount the contradictory evidence. *See Plummer,* 186 F.3d at 429; *Burnett,* 220 F.3d at 119–22. The ALJ must supply the connective reasoning between the applicant's perceived unreliability as a source of information and the weight, or lack of it, assigned to a physician's findings.

[9] I presume based on context that this conclusion is the ALJ's explanation for her decision to not credit Dr. Crichlow's argument that Ms. Davis has a marked limitation in her ability to interact appropriately with the public and co-workers. Under "paragraph B," the functioning area of "adapt or manage oneself"

"tearful and anxious" in his report and noted that her affect and mood were characterized by "marked anxiety and depression." R. 434. This finding is consistent with several reports from her visits with treating psychiatrists. *See, e.g.*, R. 459–62 (her affect on March 11, 2019 and April 22, 2019 was described as "sad but not flat"), 463 (her mood was described on October 22, 2018 as "mildly depressed"), 465 (on September 4, 2018, she was described as having "the posture and body language of a beaten dog" and her affect was "sad, flat, with no range, emotes with her eyes only"). In elaborating on this conclusion, the ALJ added, "Dr. Hoffman indicated she was improving and nearly baseline in other 2018 notes." R. 26. This is a selective reading of the medical records. I agree with Ms. Davis that the term "baseline" is virtually meaningless without context, of which little is given in the medical notes or the decision. Doc. No. 14, at 19; *see also* R. 467 (Dr. Hoffman's notes). This gap in reasoning must also be addressed on remand.

### D. I will remand Ms. Davis's case to the Commissioner for further review.

Ms. Davis seeks an award of benefits should I find that the ALJ erred in denying her SSI application. A reversal with direction to the Commissioner to award benefits is justified where there has been inordinate delay not attributable to the plaintiff, the existing record contains substantial evidence supporting a finding of disability, and it is unlikely that any additional material evidence will be unearthed on remand. *See Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (awarding benefits when delays were not attributable to the claimant, the record was unlikely to change, and substantial

---

"refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00E(4).

evidence established that claimant suffered from a severe mental disability). An award of benefits, rather than a remand for additional investigation or explanation, should be rare. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Where, as here, conflicting evidence has not been resolved, or the ALJ has not discussed all of the relevant evidence, remand is appropriate. *See Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001); *Leech v. Barnhart*, 111 F. App'x 652, 658–59 (3d Cir. 2004) (remand is appropriate where the ALJ "failed to make consistent findings and conclusions, but we are not prepared to hold that [claimant] necessarily is entitled to benefits…"). As there is conflicting substantial evidence which remains to be resolved in this matter, there has not been inordinate delay in this case, and more material evidence may be unearthed given Ms. Davis's fluctuating medical conditions, I find that a remand, rather than an award of benefits, is appropriate here. I make no judgments as to the weight of the evidence on the record but instruct the ALJ on remand to weigh all material evidence under the appropriate legal standards and to discuss and resolve evidence which contradicts her findings.

## CONCLUSION

For the reasons explained, Ms. Davis's request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

**BY THE COURT:**

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**